HOWARD W. RAYMOND, PETITIONER, ET. AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 58544, 58545, 58774–58777, 58793–58801.

Promulgated October 31, 1932.

*Randolph E. Paul, Esq., Charles B. McInnis, Esq.,* and *Simon Brett, Esq.,* for the petitioners.

*A. H. Fast, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Jerome C. Cuppia; Frederick Housman; Juliet C. White; Sidney J. White; Edward K. Cone; Robert Cassels; Arthur L. Kerrigan; Edward L. Burrill; Edward A. Pierce; J. H. Goadby Mills; Clarence J. Housman; William Mitchell; Latham R. Reed; Simon J. Shlenker.

OPINION.

STERNHAGEN: The entire dispute between the parties in this controversy is in respect of the proper treatment of the $50,000 a year paid by Pierce & Company to Swartwout and to Appenzellar. The petitioners treated the amounts as salaries or compensation paid by the partnership to Swartwout and Appenzellar for their individual services. The respondent held that these amounts were partial payments of the total of $300,000 which was a capital expenditure for the business, or more specifically the good will of the former partnership, and that it is therefore not deductible. He made no determination that the payments, if compensation, were more than reasonable for the services.

The evidence is to some extent conflicting, but the conflict is not in veracity, but in the conception of Pierce, on the one hand, and Swartwout, on the other, as to what their transaction actually was. There is plenty of room for their difference of opinion as to the proper characterization, but there is no conflict as to what took place. Both wanted a transfer of the accounts, a discontinuance of the firm and business of Swartwout & Appenzellar, and the employment by Pierce & Company of everybody in the organization. This could no doubt have been achieved in a variety of ways to the satisfaction of all. The way, however, that was chosen was that of having everyone employed by Pierce & Company at agreeable fixed salaries, and of having Pierce & Company take over the willing accounts and assume their benefits and burdens. The agreement expressly provided that nothing was to be paid for good will, and there is enough in the record to explain this as attributable to Pierce's opinion that in the nature of the brokerage business good will is too elusive to command a substantial price. We need not express an opinion as to the soundness of this view, cf. *In re Brown*, 242 N. Y. 1; 150 N. E. 581, in order to recognize that the parties to the agreement expressly excluded good will from the subject matter of their transaction. In order to override this express provision of

the agreement, it would be necessary to hold either that as a matter of law every such transaction perforce embodies the sale of good will for some part or all of the money consideration, or that the fact is contrary to the agreement. Clearly there is no such principle of law. While good will in such a partnership is within judicial recognition, and dealings in respect of it are likewise cognizable, the law does not force the postulate that any disposition of the partnership business embraces a sale of good will. *In re Brown*, *supra*; *Pfleghar Hardware Specialty Co.* v. *Commissioner*, 30 Fed. (2d) 614. The trier of the facts must determine from the evidence whether the writing is in accordance with the actual agreement, and whether in fact a price was paid for good will. Here we find no reason to believe that the parties did other than their contract provided. Cf. *Rotan* v. *United States*, 43 Fed. (2d) 232. By employing Swartwout and Appenzellar individually and agreeing to pay them $50,000 each for each of three years, Pierce & Company were getting all they sought, and the fact that this carried with it the increased business is not enough to justify treating the transaction as a purchase of good will. In the face of the express provision of the written agreement, it may at least be doubted whether either Swartwout or Appenzellar could in his lifetime have demanded any part of the $300,000 in payment for good will irrespective of his service.

The respondent cites several decisions of the Board holding that no part of the amount expressly paid by a bank for the deposit accounts of another bank is deductible as an ordinary and necessary expense. See *People's National Bank*, 23 B. T. A. 815. There is no conflict between those decisions and this, because the transaction was different, in that the banks did nothing more than purchase valuable deposit accounts with no contract of employment at a specified compensation. The respondent also urges that if any part of the $100,000 paid in each year by Pierce & Company was in payment for the business or good will, the Board is required to determine from the evidence how much is so assignable and to this extent affirm the disallowance of the deduction. We are, however, unable from the evidence to find that any part of the $300,000 was other than reasonable compensation paid for the services of Swartwout and Appenzellar, and there is therefore no support for an allocation.

Upon this issue the respondent's determination is reversed. Other matters originally involved have been adjusted by agreement.

*Judgment will be entered under Rule 50.*